Good morning, Your Honors. Michael Kelber, on behalf of Appellants Plaintiffs, the GI sports entities. I would like to reserve five minutes for rebuttal. May it please the Court. This appeal is directed to a very narrow issue. Did the District Court abuse its discretion when it failed to accept GI's incontestable trademark registration as conclusive evidence of the distinctiveness of GI's registered trademarks? Does the Court give a reason why it didn't? I mean, one would think that that's the, yeah, 15 minutes, but one would think that that's almost the end of your argument, if you know what I mean. It's, yes, that's been, my approach to this argument is reading that opinion leaves us scratching our heads a bit because the Court acknowledged that we mentioned it, acknowledged the citation that we used to support it, although cited only the District Court and not the internal cite to Park and Fly v. Dollar Park and Fly, which was the underlying authority for the proposition, and then disregarded it saying that we had somehow abandoned our theory of acquired distinctiveness. So, in fact, Your Honor, I do have 15 minutes, and I can go through the case. Let me, if that's a sufficient answer. I was going to ask you a different question, which is, assuming that we agree with you, the District Court appeared to simply stop there and say, I'm not going to consider the other factors that are involved in whether to issue an injunction. And my question is, if we agree with you on that legal issue, shouldn't we remand it for the Court to consider the remaining factors in the first instance? Your Honor, that is our position, unfortunately, because none of the other factual findings, which are factually intensive under Winters, the preliminary injunction standards, as well as likelihood of success on the merits, which includes likelihood of confusion, which is under the sleek craft factors. Although the judge did have a finding of fact that the defendant's trade dress was very similar to the registration and to the plaintiff's trade dress, it did not go through the rest of the factors under likelihood of confusion. So we would have to send it back. I believe that's correct, Your Honor. So, again, coming back to the defendant's brief, it was a lot of other issues. They didn't address the park-and-fly and the fact that the statutory authority under— Are you talking about the brief in the District Court or here? Both, Your Honor. In both places, there was very little attention paid to what we view as the issue on appeal, the issue of did GI establish that its mark was distinctive and doesn't the incontestable registration not only presumptively but conclusively establish that fact and move on? Instead, they created this David and Goliath story, which really is inaccurate both on the findings of the District Court and in terms of what actually happened in the underlying case, which is— But somewhat irrelevant to the legal issue as well. I agree, Your Honor. I think that the only reason I raise it is because this is a— our client is a company that's been around for over 20 years through its predecessors and interests and has established a very significant position with this premium product. It's known throughout the industry as one of the premier paintballs. And so for the defendants to come in as a new entrant and just blatantly copy the trade dress and then claim that they're the little guy is, in our view, inappropriate. Given the fact that you have 15 minutes, I can take 10 seconds to point out that paintballs are something to us New Yorkers. It took me a while and a little research to figure out what that was all about. In Central Park, you know, we use bullets. That's perhaps an unfortunate commentary. It's actually a fun sport, having represented this client and actually participated in it. It is a fun sport, and they have all kinds of competitions. My clerk from Illinois knew all about it, but I didn't. I'm sorry. Go ahead. My apologies. I'd be remiss in not also hitting our second point, which is that even apart from the conclusive evidence, which should, as you point out, end the inquiry here, we also submitted significant evidence on secondary meaning. In fact, more so, and as a trademark lawyer, it's hard to find this strong amount of evidence that we submitted to the district court, which the district court didn't even acknowledge, that we had over 20 years of continuous and substantially exclusive use, that there were 125 paintball fields that had been using this trade dress product for over 10 years, that in 2015 alone there were 250 million paintballs with this marble trade dress on it, and also the company's significant efforts to police its mark. Do you think we can, the panel, can decide the rest of this case now without sending it back? I mean, just as a matter of legal principle, is that something that we can do, and is it something we should do? The more obvious thing is if that's wrong, the first part is wrong, we'll let them do the rest of it. But is that something we have to do, or is that something that's a good idea to do, or is it something that's a bad idea to do? It's something that my client would clearly love for you to do, and in fact, given the delay that the appeal has caused, you know, the idea of a preliminary injunction, this case has been pending for almost a year now. So that would be certainly desirable from our standpoint. I think the likelihood of confusion factors are pretty well briefed and are in the record. So you've got the judge has found on the most important issue, which is that the defendant's paintball looks a lot like the registration. It's, I think, unchallenged that the paintball products are identical, that the consumers are identical, all of the sleek factors. I feel that way if we looked at all of this and said, in any event, there isn't enough here for a preliminary injunction. If that was our view, then you'd much prefer that we have it sent down, isn't that right? Well, yes, my client would prefer to get the relief that it's been seeking for the better part of a year. I just have one question. It looks like APX is arguing that your marbleizer trade dress is not referenced in the 101 registration because the 101 registration has identifiable lines with distinct edges between each other, while the marbleizer trade dress has merely randomized marbleizing of the two colors with no distinction between where one begins and the other ends. Can you just briefly respond to that? I'm just curious about that. Yes, Your Honor. A couple of problems with trade dress registration in that you've got a two-and-a-half by two-and-a-half-inch line drawing to represent a three-dimensional design. So there are some inherent limitations in the ability to depict the actual trade dress at issue. That is why the Trademark Office requires a written description. And the written description, in fact, is part of the registration and can be used in reviewing it, which says that it's contrasting colors that are blended randomly together in a fanciful design, which together does provide a fair amount of certainty about what the trade dress at question is. And stepping aside from the scope of the claim, the registration itself is at least one embodiment of the trade dress. And so that is conclusive evidence of the distinctiveness of our client's trade dress. And then you could go on to likelihood of confusion to see whether the registration, the embodiment in the registration, is likely to be confused with the defendant's product. Either way, I don't think that avoids the issue and avoids the impact of the conclusive evidentiary support by the registration, the incontestable registration. If there are no further questions, I will reserve the balance of my time. I do that. Thank you. Good morning, Your Honors. Louis Storny, Ford Defendant, APX Gear, LLC. Your Honors, the district court's ruling, as observed by Judge Sack, does not articulate why it discounted the argument that the authority, although cited in the form of not park-and-fly but a case that relies on park-and-fly, simply did not explain that. And so, but we must assume, and I think it's a reasonable inference, that it was read and considered. Nevertheless, the district court goes on to express concern about the prior statements that constituted an admission that there was no secondary meaning. Now, at the time of... You're talking about the earlier case? Yes, I am. But how is that even relevant? Because the earlier case came at a time that predated the acquisition of incontestable status. So how could they have argued it in the earlier case? Because there's a time requirement involved. Yeah. So what were they supposed to say? In a couple of years, this will be incontestable? I mean, that was not relevant. So I don't understand why that case even matters. Well, that's clear. And thank you for the question. At the time of oral argument before the district court, my opponent cleared up the timing issue quite aptly. And so, to your point, I concur. So then why isn't it true that the incontestable status of the trade dress here conclusively demonstrates secondary meaning? Well, because for two reasons. One, the incontestable registration is not subject to being taken on its face. And at the time the district... What does that mean? I don't understand. Well, for example, there are exceptions to the incontestable registration. Under 15 U.S.C. 1115B9, there are a number of equitable exceptions to... And what do you think the district court relied on among those equitable exceptions? We argued to the district court. Regrettably, the district court did not expressly reference these arguments. But it was argued at the time and contained in the brief specifically that the use of expired patents, RP share of patents, that were the purpose of those patents was to create a swirl effect in the paintballs. Those came off patent. The attempt here was to unfairly and inequitably extend the life of the design of a utility patent. That equitable argument that you cannot do what you are attempting to do... But I thought the district court here found... I may be misremembering this, but I thought the district court found that there was, in fact, non-functionality here. The court did expressly find non-functionality. Okay. Well, doesn't that answer to the negative, your claim about the patents? Well, it didn't expressly address the RP share portion. It found functionality in the context of what is needed to show a preliminary injunction for trade dress. The district court did not expressly address whether the attempt, the argument made by myself and my client, the attempt to extend the life of those patents beyond the patentable life through a trade dress, did not consider that argument at all in the ultimate ruling. But it was made to the court, and it was made to the court and emphasized at the time of oral argument under 15 U.S.C. 1115B79. So the equitable argument perhaps, and a reasonable inference could be made here, is that the district court, having heard the explanation from counsel as to the timing, as your Honor, Judge Graber brought up, the prior case which became irrelevant by virtue of the incontestability registration. But then the district court also heard the argument and emphasized that the equitable arguments related to, that are exceptions to the incontestability registration, could form a basis for the court keeping its ruling as articulated. And that argument, I think, can be inferred, but it is not contained in district court's ruling. So as a general proposition, you accept that an incontestable registered trademark serves as a conclusive proof that the mark has secondary meaning? By default, that is the case. Okay. And so you're arguing that there's an exception to that, right? Correct. And that that's what the district court must have relied on, even though he didn't say it, and maybe not that he misunderstood that concept? That is correct, Your Honor. Okay. So what do you think the real issue for us here is on appeal? Is it to determine whether this marbleizer trade dress is, in fact, referenced in the 101 registration? The answer to that question is to determine whether or not the district court's ruling is supported by the law and the evidence before it. The distinction between the 101 registration and the marbleizer is advanced in our opposition brief, I don't think is our primary argument, Judge McGovern. I think the primary argument is that the equitable nature of the use of the trade dress regime to extend the patent is itself an exception to the incontestability registration statute. And the reason that I say that is because the district court found in its ruling, and I have to concede, as I must, that the reply brief noted the express finding by the district court that it found a similarity between the marbleizer trade dress and the 101 registration. Does that answer your question? Okay. The purpose and the reason that this equitable argument can be made and was made to the district court judge was that the nature of a patent is to make the thing formally covered by the patent public property, to extend it in this way beyond the life of the patent is inherently an equitable determination. The court had reviewed that in the form of the opposition brief and the evidence, and despite the citation to the case relying on pork and fly, expressed its reservation that the GI sports had failed to satisfy the element for secondary meeting. Unless there are further questions, Your Honor, I have no further questions. I don't believe we do. Thank you. Mr. Kilburn? Thank you, Your Honors. Just to address the issue that this idea that somehow the district court was ruling on these equitable defenses when in fact it held that it was the lack of acquired distinctiveness and the absence of proof on acquired distinctiveness is a disconnect for me. I don't know how you would infer that. And beyond that, I think that any of the equitable defenses that APX has raised would require significant fact findings that are not made in the decision or not even alluded to. So I don't believe that that can prevail for defense. We also have a general principle that we can affirm a district court on any ground that appears in the record that was argued to the district court, and I gather that this was argued to the district court. So what is your response to that concept and also to the merits? In our briefs, we did address these equitable arguments, and it's really a red herring, this whole idea of patent and patent exhaustion. What we're talking about is trademark rights. Trademark rights are a completely different animal from patents. They serve different purposes. Trademarks avoid consumer confusion. So when a consumer goes to a paintball field and has a good experience with a particular paintball and they recognize that the trade dress is coming from a particular source, they can get that paintball again and not get a cheap imitation and be confused. So that's the purpose of trademark law. The patents, first of all, don't mention paintballs. The patents at issue that were discussed in the Brass Eagle case in 2002, 2003, had to do with a manufacturing process that was for pharmaceutical or other gel caps. So they included paintball, but they included any kind of encapsulation. You can make the registered trade dress, and our client has, by means other than the patented method. You can make it through printing, and you can make it through other ways. So that's really, I think, a red herring to even go down the patent path, and I don't think the record supports that defense, even if you were to wade into those arguments and review the record from the argument before the district court. I do want to go back to two points. The earlier question about the distinction between the drawing of the registration and the actual paintballs themselves. When you register a trademark, you have to provide a specimen of use, and the Trademark Office reviews that specimen of use to make sure that it conforms with the registration. And the test there is whether there's a materially equivalent commercial impression. So as marks evolve, sometimes they change a stylization, a word, maybe the mark includes the word ink and the company drops the word ink. And the Trademark Office, when it's evaluating the declarations of use, evaluates it for the same commercial impression. And on page 2ER, page 41 of the record, in that brief, there are the three different times in which GI had submitted specimens of use to the Trademark Office. First, upon its original filing. Second, on its six-year renewal when it attained incontestable status. And then last, on its 10-year renewal. And you can see there's some variation between those specimens. In each case, the Trademark Office accepted that those specimens fell within the bounds of the registered trademark. So I think, again, the fact that the judge had an actual factual finding that the APX balls look like the registered trade dress is binding on the defendants. The last point I'd like to raise is the question of being able to decide the preliminary injunction, which it is in the record that the argument on both sides and the evidence on both sides. Again, I don't think the likelihood of confusion factors were pretty well articulated, and the most important one is are the marks strong, which we have evidence of strength of the mark. We have evidence of the similarity of the mark. The marks are identical. The channels of trade are identical. And so it wouldn't even be a stretch for your honors to make a finding on that and send it back. The proofs on the comparison of the harm were not as well developed, but there was a record for it. Remind me, this is about a preliminary injunction. If you don't get the preliminary injunction, where does the case, where would you expect the case to go from there? Well, the discovery has been ongoing. We have depositions scheduled right now while we're in California with some third-party witnesses, so we will continue pursuing the case to trial. With that, Your Honor, if there's no further questions. I believe there are not. Thank you, Counsel. Thank you very much. The case just argued is submitted, and we appreciate very interesting and helpful arguments.
judges: Sack, Graber, Murguia